**COMMONWEALTH of Pennsylvania, Appellant at 274**

v.

**Kevin Michael JACKSON, Appellant at 337.**

Superior Court of Pennsylvania.

Submitted Aug. 23, 2010.

Filed Dec. 8, 2010.

Erin C. Connelly, Assistant District Attorney, Erie, for Commonwealth.

Gina P. McCandrew, Public Defender, Erie, for Jackson.

BEFORE: MUSMANNO, DONOHUE and OTT, JJ.

OPINION BY DONOHUE, J.:

This is an appeal from an order finding that the attachment of double jeopardy prohibited the criminal prosecution of Kevin Michael Jackson ("Jackson") for certain offenses which had previously served as the basis for a finding of indirect criminal contempt of an order granted under the Protection from Abuse Act ("PFA order").

Following our review, we affirm in part, reverse in part, and remand for further proceedings.

The facts underlying this appeal may be summarized as follows. On April 15, 2008, following a hearing, a PFA order was entered against Jackson. The order contained the following relevant provisions:

1. [Jackson] shall not stalk, harass, threaten or attempt to use physical force that would reasonably be expected to cause bodily injury to [his wife ("Wife")] or any other protected person in any place where they might be found.

2. [Jackson] is completely evicted from [the marital residence] or any other residence where [Wife] or any other person protected under this order may live. Exclusive possession of the residence is granted to [Wife]. [Jackson] shall have no right or privilege to enter or be present on the premises of [Wife] or any other person protected under this order.

3. [Jackson] is prohibited from having **ANY CONTACT** with [Wife], either directly or indirectly, or any other person protected under this order, at any location, including but not limited to any contact at [Wife's] or other protected party's school, business, or place of employment.

4. Except as provided in paragraph 5 of this order [regarding custody of minor children], [Jackson] shall not contact [Wife], or any other person protected under this order, by telephone or by any other means, including through third persons.

PFA Order, 4/15/08, at 1–3 (emphasis in the original).

On January 13, 2009, Jackson entered the marital residence while Wife was

there.[1] On the same date, State Trooper Mark Barsotti ("Trooper Barsotti") filed a criminal complaint against Jackson, charging him with one count each of burglary, criminal trespass, firearms not to be carried without a license, assault, and possession of an instrument of crime. Trooper Barsotti also filed a petition for indirect criminal contempt for violation of the PFA order.

A hearing on the petition for indirect criminal contempt was held on January 29, 2009, at which time Jackson admitted to violating the PFA order by entering the marital residence. N.T., 1/28/09, at 3. He was sentenced to 60 days to six months of incarceration.

A preliminary hearing on the criminal charges occurred on March 9, 2009. At that time, Trooper Barsotti withdrew all charges but burglary, criminal trespass and assault. On January 11, 2010, Jackson presented the motion at issue. Following argument on the motion, the trial court granted Jackson's request regarding the burglary and trespass charges, but denied his request as to the assault charge. The Commonwealth filed a timely appeal from this determination,[2] and Jackson then filed a cross-appeal.

■ The Commonwealth presents the following issue for our review:

Did the [trial] court err in finding double jeopardy attached to prosecution of burglary and criminal trespass after a conviction for indirect criminal contempt for being on the premises protected under the [PFA order] where the alleged crimes were committed?

Appellant's Brief at 3.

Jackson presents the following issue in his cross-appeal:

Did the [trial] court err in finding double jeopardy did not attach to prosecution of simple assault after a conviction for indirect criminal contempt for the same set of facts?

Appellee's/Cross–Appellant's Brief at 10. In essence, both parties raise the same question, which we phrase as follows: whether double jeopardy attaches so as to prohibit the criminal prosecution of any of the offenses charged, which arose from the same incident that was the basis for the finding of indirect criminal contempt for violation of a PFA order.[3]

■ "The Double Jeopardy Clause, applicable to the States through the Fourteenth Amendment, provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or

1. There are no facts of record that would provide any detail as to the circumstances surrounding Jackson's entry into the martial residence. At the inception of the indirect criminal contempt hearing, Jackson admitted violating the PFA order by entering the martial residence on this date, and then the trial court proceeded to sentencing. No testimony was taken, nor was a stipulation of facts read into the record, as to the circumstances surrounding Jackson's violation of the PFA order.

2. It is clear that the order from which this appeal has been taken is not a final order pursuant to Pa.R.A.P. 341. However, the Commonwealth, in conformance with Pa.

R.A.P. 311(d), has filed a good-faith certification averring that the order at issue terminates or substantially handicaps its prosecution, and so this appeal is properly before us. *See Commonwealth v. Moser*, 999 A.2d 602, 605 n. 2 (Pa.Super.2010) (noting that the Superior Court may not inquire into the grounds for the Commonwealth's good faith certification).

3. "An appeal grounded in double jeopardy raises a question of constitutional law. This court's scope of review in making a determination on a question of law is, as always, plenary." *Commonwealth v. Mattis*, 454 Pa.Super. 605, 686 A.2d 408, 410 (1996).

limb.'" *Commonwealth v. Decker,* 445 Pa.Super. 101, 664 A.2d 1028, 1029 (1995) (citing U.S. CONST. amend. 5). "Furthermore, the Double Jeopardy Clause [ ] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Id.*

■ "To determine whether a defendant's protection against multiple punishments for the same offense has been violated, this Commonwealth applies the test set forth in *Blockburger v. U.S.,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)." *Commonwealth v. Beckwith,* 449 Pa.Super. 433, 674 A.2d 276, 279 (1996). The U.S. Supreme Court explained this test as follows:

> In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies. The same-elements test, sometimes referred to as the *"Blockburger"* test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution.

*United States v. Dixon,* 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

We note that "the 'same-elements' test of *Blockburger* has long been followed in this Commonwealth" and its application "requires a comparison of the elements of the offenses to determine whether each offense requires proof of a fact which the other does not." *Commonwealth v. Caufman,* 541 Pa. 299, 303, 662 A.2d 1050, 1052 (1995) (citations omitted). When making such a comparison, overlap in proof between the two prosecutions does not estab-

lish a double jeopardy violation. *Beckwith,* 674 A.2d at 279.

For example, in *Decker,* a wife obtained a PFA order against her husband ("Decker") on her behalf and the behalf of her two children. The PFA order provided that Decker was "enjoined from physically abusing the plaintiff ... and her minor children, or from placing them in fear of abuse," and "ordered to refrain from harassing the plaintiff or her minor children." *Decker,* 664 A.2d at 1028–29. A few months later, Decker was charged with indirect criminal contempt for violating the PFA order. The indirect criminal contempt complaint alleged that Decker verbally harassed his wife, slapped her across the face, and shoved her into a door frame, resulting in a lump. At an indirect criminal contempt hearing, Decker admitted that he violated the PFA order by engaging in the actions alleged in the complaint. The court entered an order adjudicating Decker in contempt of the PFA order, and subsequently sentenced him to three months of imprisonment. *Id.* at 1029. Decker was later charged with simple assault for the same episode upon which his contempt conviction had been based. He filed a motion seeking to dismiss the information charging him with assault, arguing that the prosecution was barred under the Double Jeopardy Clause of the United States Constitution. This Court applied the *Blockburger* test, and reasoned as follows:

> [Decker] was ordered by the PFA to abstain from abusing his wife. The Pennsylvania Protection From Abuse Act defines abuse as "[a]ttempting to cause or intentionally, knowingly or recklessly causing bodily injury ..." 23 Pa.C.S.A. § 6102. In the indirect criminal contempt proceeding, the court found that [Decker] willfully disobeyed the PFA order by abusing his wife. [Decker] was later found guilty of simple assault based upon the same conduct.

Section 2701(a)(1) of the crimes code states that a person is guilty of assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." The two statutes contain identical language. Under the "same elements" *Blockburger* test, the criminal contempt offense contains one element that the simple assault does not—willful disobedience of the PFA order; but, the offense of simple assault, under the facts of this case, does not contain any elements not included in the criminal contempt offense. Because simple assault is a lesser-included offense of the criminal contempt, the subsequent prosecution is barred by the Double Jeopardy Clause.

*Id.* at 1031.

■ Returning to the case presently before us, we first note the requirements for a finding of indirect criminal contempt:

Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order.... To establish indirect criminal contempt, the Commonwealth must prove: 1) the Order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the Order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

*Commonwealth v. Brumbaugh,* 932 A.2d 108, 110 (Pa.Super.2007).

Jackson was found to have violated the PFA order because he entered the marital residence. Therefore, in order to establish indirect criminal contempt, the Commonwealth was required to prove that the PFA order was sufficiently specific so as to make clear to Jackson that he was prohibited from being present at the marital residence; that Jackson had notice of the PFA order; and that he was knowingly and willfully present at the marital residence despite the terms of the PFA order; and that he entered the marital residence with wrongful intent.

Turning to the crimes at issue, Jackson was charged with criminal trespass under 18 Pa.C.S.A. § 3503(a)(1)(i). A person commits this crime "if, knowing that he is not licensed or privileged to do so, he [ ] enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof." *Id.* Thus, in order to prove that Jackson committed criminal trespass, the Commonwealth would have to prove that Jackson (1) knew he was not licensed or privileged to enter the marital residence and (2) that he entered the marital residence. In order to find Jackson in indirect criminal contempt, the Commonwealth would have to establish that Jackson (1) entered the martial residence, (2) despite knowing that he was not permitted to enter (as well as multiple elements that are not required for a conviction of criminal trespass, *i.e.,* whether the PFA order was sufficiently specific; whether Jackson had notice of the PFA order; and whether he acted with wrongful intent). Therefore, in order to prove indirect criminal contempt, the Commonwealth would have to prove both elements that make up the crime of trespass, as well as additional elements unique to the indirect criminal contempt charge. Accordingly, in this instance, criminal trespass is a "species of lesser-included offense" of Jackson's indirect criminal contempt violation. *Decker,* 664 A.2d at 1031. This comparison therefore fails the *Blockburger* test, and thus a subsequent prosecution for criminal trespass is prohibited by the Double Jeopardy Clause.

■ Considering the burglary charge, our law provides that "a person is guilty of burglary if he enters a building or occu-

pied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter." 18 Pa.C.S.A. § 3502(a). Thus, to convict Jackson of burglary, the Commonwealth would have to prove that Jackson entered the former marital residence with the intent to commit a crime therein. *See Commonwealth v. Alston,* 539 Pa. 202, 206, 651 A.2d 1092, 1094 (1994). The intent to commit a crime is not a required element for a finding of indirect criminal contempt, and as outlined above, a finding of indirect criminal contempt requires proof of multiple elements relating to the PFA order. Thus, because there are elements unique to both indirect criminal contempt and burglary, this comparison passes the *Blockburger* test, so a prosecution for burglary does not run afoul of the Double Jeopardy Clause.

■ Finally, we consider the assault charge. Jackson was charged with assault under Section 2701(a)(3) of the Crimes Code, which provides that "[a] person is guilty of assault if he [ ] attempts by physical menace to put another in fear of imminent serious bodily injury." 18 Pa.C.S.A. § 2701(a)(3). As discussed above, the PFA violation giving rise to the finding of indirect criminal contempt conviction was Jackson's presence at the marital residence. None of the elements of that offense are shared with the elements of simple assault. As such, the criminal prosecution on this charge may proceed as well.

Thus, we conclude that the trial court did not err in dismissing the trespass charge and refusing to dismiss the assault

charge, but that it did err in dismissing the burglary charge against Jackson. Accordingly, we affirm the portions of the trial court's order granting his motion to dismiss the trespass charge and denying Jackson's motion to dismiss the assault charge, reverse the portion of the trial court's order granting Jackson's motion to dismiss the burglary charge, and remand to the trial court for further proceedings.[4]

Order reversed in part and affirmed in part. Case remanded for further proceedings. Jurisdiction relinquished.

---

4. Jackson also raises issues regarding the Constitution of the Commonwealth of Pennsylvania and the doctrine of collateral estoppel. *See* Appellee/Cross–Appellant's Brief at 15–16. However, these issues were not included in his 1925(b) statement. Accordingly, they are waived for purposes of appeal. *See Commonwealth v. Nobles,* 941 A.2d 50, 51–52 (Pa.Super.2008), Pa.R.A.P. 1925(b)(4)(vii).