J-A19026-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT WAYNE TAYLOR, II, | |
| Appellant | No. 1723 WDA 2013 |

Appeal from the Judgment of Sentence Entered September 24, 2013
In the Court of Common Pleas of Armstrong County
Criminal Division at No(s): CP-03-MD-0000212-2013

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT W. TAYLOR, II, | |
| Appellant | No. 1724 WDA 2013 |

Appeal from the Judgment of Sentence Entered September 24, 2013
In the Court of Common Pleas of Armstrong County
Criminal Division at No(s): CP-03-MD-0000197-2013

BEFORE: BENDER, P.J.E., OLSON, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED SEPTEMBER 26, 2014**

Appellant, Robert Wayne Taylor, II, appeals from the September 24,

2013 judgment of sentence of 90 days' incarceration and $300 in fines,

---

[*] Former Justice specially assigned to the Superior Court.

1

imposed after he was convicted following a non-jury trial of two counts of indirect criminal contempt (ICC). After careful review, we reverse.

The trial court summarized the facts and procedural history of this case as follows:

> Joy N. Taylor, now Joy N. Kochman [("Ms. Kochman")], initiated a protection from abuse action against [Appellant] on or about September 26, 2011. A final protection from abuse order was entered on May 18, 2012 (the "PFA Order"). The PFA Order provides that [Appellant] "shall not contact [Ms. Kochman], or any other person protected under this order, by telephone or by any other means, including through third persons." The only exception to the communication restriction in the PFA Order is found in paragraph 5, which provides that "the parties may have text message contact for the purposes of custody scheduling only, without said contact constituting violation of this order. All other terms of this order remain in effect during such contact." On May 22, 2013, the parties entered into a separate custody consent order, paragraph 6 of which provides that "the parties may have text communication with one another for legitimate issues involving the children."
>
> On June 21, 2013, [Ms. Kochman] and [Appellant] met at the Sheetz convenience store in Kittanning, Pennsylvania for a custody exchange of the parties' two children. The children exited Ms. Kochman's car and walked to [Appellant's] vehicle. The parties were parked approximately four vehicle[] widths apart. [Appellant] then asked one of the children to ask Ms. Kochman whether she had spoken with her lawyer about matters concerning the sale of the parties' former marital residence. The child went back to Ms. Kochman's car, spoke with her about the matter, then returned to [Appellant's] vehicle. Ms. Kochman then exited her vehicle and began speaking to [Appellant] about the house. After the parties' exchange, [Appellant] went into the store with the children. Based on his indirect communication with Ms. Kochman, through the

child, [Appellant] was charged with [ICC] on or about July 2, 2013 (No. MD-0000197-2013).

On or about July 13, 2013, [Appellant] sent Ms. Kochman a text message, again with regard to the marital residence. It read[] as follows:

> I also sent an email to your lawyer today about the house on 4th Avenue. The bank said if you get paperwork done I told Cynthia about they will take your name off. So if you could please talk to her about it, me and the girls can start moving into it. Thanks. I will tell them. They said they love you.

Based on the contents of the text message, [Appellant] again was charged with [ICC] on or about July 16, 2013 (No. MD-000212-2013).

The [trial court] conducted a bench trial on both counts of indirect criminal contempt on July 29, 2013. At the trial, the parties generally did not dispute what occurred at the Sheetz store on June 21, 2013 or the contents of the text message sent by [Appellant] on July 13, 2013. The [trial court] ultimately found that the Commonwealth had proven beyond a reasonable doubt that [Appellant] had violated the PFA Order on both counts. The [trial court] concluded that the subject of both communications was not a legitimate concern regarding the children but a legal matter regarding the disposition of real estate involved in the parties' divorce proceeding.

[On September 24, 2013, t]he [trial court] sentenced [Appellant] to 90 days' incarceration in the Armstrong County Jail, together with a $300.00 fine on both counts, the sentences to run concurrently. [Appellant] filed notices of appeal and concise statements of [errors] complained of on appeal at both case numbers on October 24, 2013 and November 18, 2013.

Trial Court Opinion, 12/13/13, at 1-4 (unnecessary capitalization and footnote omitted).

On appeal, Appellant presents the following two issues for our review:

I.     Did the trial court err and/or abuse its discretion in failing to consider the custody modification entered May 22, 2013 prior to the filing of the subject indirect criminal contempt charge[s] which allowed for text communication for any legitimate issue involving the children?

II.    Did the trial court err and/or abuse its discretion in sentencing [Appellant] to a [concurrent] sentence [of] three months [of] incarceration and fines of $300.00?

Appellant's Brief at viii (unnecessary capitalization omitted).

In his first issue, Appellant essentially challenges the sufficiency of the evidence to sustain his convictions of ICC. Our standard of review of such claims is well-settled:

> In reviewing the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty. Moreover, when reviewing the sufficiency of the evidence, this Court may not substitute its judgment for that of the fact-finder; if the record contains support for the convictions they may not be disturbed.

***Commonwealth v. Stokes***, 78 A.3d 644, 649 (Pa. Super. 2013) (internal citations, quotations, and brackets omitted).

Pursuant to 23 Pa.C.S. § 6114,

> [w]here the police, sheriff or the plaintiff have filed charges of indirect criminal contempt against a defendant for

4

violation of a protection order issued under this chapter, a foreign protection order or a court-approved consent agreement, the court may hold the defendant in indirect criminal contempt and punish the defendant in accordance with law.

23 Pa.C.S. § 6114(a). "Where a PFA order is involved, an [ICC] charge is designed to seek punishment for violation of the protective order." *Commonwealth v. Jackson*, 10 A.3d 341, 346 (Pa. Super. 2010) (citation omitted). To establish ICC, the Commonwealth must prove:

1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

*Id.* (citation omitted).

On appeal, Appellant solely challenges the sufficiency of the evidence to prove the 'wrongful intent' element of ICC. Essentially, Appellant maintains that his June 21, 2013 communication with Ms. Kochman at the Sheetz store, and his July 13, 2013 text message to her, were both for the purpose of discussing legitimate issues involving their children's housing. The trial court, however, found that Appellant's intent "was not to discuss matters involving the children's well-being or custody schedule, but instead was to discuss with Ms. Kochman the outstanding issues regarding their jointly-held real property and to impress upon her [Appellant's] desire to come to a quick resolution." TCO at 6. Thus, the court found the 'wrongful intent' element satisfied.

Even accepting the court's interpretation of Appellant's intent in communicating with Ms. Kochman, we disagree with its legal determination that his intent was wrongful. In Appellant's July 13, 2013 text message to Ms. Kochman, Appellant stated: "So if you could please talk to [your attorney] about it, **me and the girls can start moving into [the house]**." N.T., 7/29/13, at 6 (emphasis added). In describing Appellant's communication with her at the Sheetz store, Ms. Kochman testified that Appellant was "asking about what was going on with the other house [the parties' jointly owned] and that [Appellant] wanted to move into it." *Id.* at 10. It was undisputed at trial that the "jointly-held real property" about which Appellant was communicating with Ms. Kochman was a home that Appellant desired to live in with the couple's children. Appellant stated at trial that he was trying to move into that residence, which was closer to Ms. Kochman's home, so the children would be "closer to their school" and "have easier access" to Appellant. *Id.* at 17. Appellant testified that the bank was "going to foreclose on the house" unless Ms. Kochman timely signed paperwork permitting Appellant to refinance the mortgage on the home. *Id.* at 16. Appellant attempted to communicate with Ms. Kochman's attorney to obtain Ms. Kochman's signature, but did not receive a response. *Id.*

Considering the context surrounding Appellant's communications with Ms. Kochman, we cannot agree with the court that his intent was wrongful. Instead, Appellant's purpose in contacting with Ms. Kochman was to resolve a legitimate issue involving where the couple's children would be living when

6

in Appellant's custody.  There is also no indication in the record that Appellant communicated with Ms. Kochman for the purpose of abusing, stalking, harassing, or threatening her, as prohibited by the PFA petition.[1] Accordingly, the evidence was insufficient to prove that Appellant possessed wrongful intent in communicating with Ms. Kochman.  Thus, we reverse Appellant's convictions for two counts of ICC.  In light of this disposition, we need not address Appellant's second issue challenging his sentence.

Judgment of sentence reversed.  Jurisdiction relinquished.

Justice Fitzgerald joins in the memorandum.

Judge Olson files a dissenting memorandum.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/2014

---

[1] **See Commonwealth v. Walsh**, 36 A.3d 613, 619 (Pa. Super. 2012) (indicating that to prove ICC of a PFA order that stated the appellant "shall not abuse, harass, stalk or threaten any of the above persons," and prohibited the appellant from contacting the petitioner, the Commonwealth was required to prove "that he knowingly and willfully made threatening or harassing statements" to the petitioner); **Commonwealth v. Haigh**, 874 A.2d 1174, 1177 (Pa. Super. 2005) (reversing ICC conviction based on the defendant's communicating with his wife in violation of a PFA order where, _inter alia_, the defendant "did not believe that he was threatening [his wife], and neither she nor any one [_sic_] else in the courtroom heard [the defendant] threaten [his wife] or otherwise make any threatening movements or gestures toward her").