J-A19026-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT WAYNE TAYLOR, II, | |
| Appellant | No. 1723 WDA 2013 |

Appeal from the Judgment of Sentence of September 24, 2013
In the Court of Common Pleas of Armstrong County
Criminal Division at No(s): CP-03-MD-0000212-2013

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT WAYNE TAYLOR, II, | |
| Appellant | No. 1724 WDA 2013 |

Appeal from the Judgment of Sentence of September 24, 2013
In the Court of Common Pleas of Armstrong County
Criminal Division at No(s): CP-03-MD-0000197-2013

BEFORE:  BENDER, P.J.E., OLSON and FITZGERALD,* JJ.

DISSENTING MEMORANDUM BY OLSON, J.:   **FILED SEPTEMBER 26, 2014**

Because I believe that the learned majority views the evidence in the light most favorable to Appellant, in contravention of our clear standard of review, and because I believe there was sufficient evidence to support the

---

* Former Justice specially assigned to the Superior Court.

trial court's finding of wrongful intent to support both indirect criminal contempt convictions, I respectfully dissent.

Appellant argues that the trial court convicted him of both counts of indirect criminal contempt based upon the PFA order entered on May 18, 2012, without regard to the custody modification order entered on May 22, 2013 that expanded contact to include "text communication with one [another] for legitimate issues involving the children."  Appellant's Brief at 1. Appellant argues that his communications with Joy N. Kochman (Ms. Kochman) were limited to his relocation with the parties' children into the marital residence, so that the children could be closer to their school.  *Id.* at 2-3.  Appellant maintains that the trial court erred by concluding "the only reason for communication on [Appellant's] part was economic issues involving the divorce."  *Id.* at 3.  He claims that the subject text message and request for communication through his daughter at a custody exchange concerned nothing more than "paperwork involving a house where he would move with his girls."  *Id.* at 5. As such, Appellant contends that the Commonwealth "did not and could not prove beyond a reasonable doubt that [Appellant] willfully intended to violate the PFA."  *Id.* at 4.  I disagree.

Our standard of review is well-settled:

> In reviewing the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. This standard is equally applicable to cases where the evidence

is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty. Moreover, when reviewing the sufficiency of the evidence, this Court may not substitute its judgment for that of the fact-finder; if the record contains support for the convictions they may not be disturbed.

*Commonwealth v. Stokes*, 78 A.3d 644, 649 (Pa. Super. 2013) (internal citations, quotations, and brackets omitted).

As the majority sets forth, pursuant to 23 Pa.C.S.A. 6114,

[w]here the police, sheriff or the plaintiff have filed charges of indirect criminal contempt against a defendant for violation of a protection order issued under this chapter, a foreign protection order or a court-approved consent agreement, the court may hold the defendant in indirect criminal contempt and punish the defendant in accordance with law.

23 Pa.C.S.A. § 6114(a).

"Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order." *Commonwealth v. Jackson*, 10 A.3d 341, 346 (Pa. Super. 2010) (citation omitted). To establish indirect criminal contempt, the Commonwealth must prove:

1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

*Id.* (citation omitted).

Here, the PFA order states:

- 3 -

[Appellant] shall not abuse, harass, stalk, or threaten any of the above persons in any place where they might be found.

Except as provided in paragraph 5 of this order, [Appellant] shall not contact [Ms. Kochman], or any other person protected under this order, by telephone or by any other means, including through third persons.

\*     \*     \*

5. […]The parties may have text message contact for purposes of custody scheduling only, without said contact constituting violation of this order. All other terms of this order remain in effect during such contact.

PFA Order, 5/18/2012, at 1, 4.

Thereafter, on May 22, 2013, a custody order was entered by consent of the parties providing, in pertinent part:

6. The parties may have text communication with one another for legitimate issues involving the children.

Order, 5/22/2013, at 3.

The trial court determined that Appellant engaged in two communications with Ms. Kochman that constituted violations of the PFA order. The first communication was through the parties' minor child on June 21, 2013; the other was via text message on July 13, 2013. In so determining, the trial court concluded:

It is undisputed that the PFA Order was clear, that [Appellant] was aware of them, and that [Appellant] voluntarily initiated both communications with [Ms. Kochman]. With regard to wrongful intent, the [trial court …] concluded that [Appellant's] intent was not to discuss matters involving the children's well-being or custody schedule, but instead was to discuss with Ms. Kochman the outstanding issues regarding their jointly-held real property

- 4 -

and to impress upon her [Appellant's] desire to come to a quick resolution. The [trial court] also noted as part of its findings that [Appellant] had violated the PFA Order on 11 occasions, eliminating any possibility that the communications were unintentional or benign.

Trial Court Opinion, 12/13/2013, at 6. I agree with the trial court's conclusions.

I reviewed the two communications that served as the basis of the individual convictions separately. With regard to the communication on June 21, 2013, there is no dispute that during a custody exchange at a Sheetz convenience store, Appellant communicated with Ms. Kochman through the parties' oldest daughter. N.T., 7/29/2013, at 10-11, 17-18. In reading the PFA order and the custody consent order together, Appellant was not permitted any contact with Ms. Kochman "by telephone or by any other means, including through third persons" except for "text message contact for purposes of custody scheduling only" and then subsequently modified to provide for "text communication with one another for legitimate issues involving the children." The orders at issue were clear that at no time was Appellant permitted contact with Ms. Kochman through a third party. Appellant does not dispute that he had notice of the PFA order and the custody consent order and Appellant admitted that he initiated contact with Ms. Kochman through their daughter, a volitional act. Thus, the first three elements above, as required to establish indirect criminal contempt, have been met with regard to the conviction related to the communication via the parties' daughter.

As for the fourth element needed to establish indirect criminal contempt, Appellant's argument focuses almost entirely on the trial court's determination that Appellant's communication constituted wrongful intent. Regarding the incident at Sheetz, Ms. Kochman testified that Appellant was "asking about what was going on with [another] house [the parties' jointly owned] and that [Appellant] wanted to move into it" and that Appellant "approached [her] in regards to the sale of the other house." N.T., 7/29/2013, at 10. Appellant told Ms. Kochman that he did "not want to move into the other house if it [were] going to be a PFA violation for him to move in there[.]" *Id.* at 11. She further testified that Appellant stated:

> I want to move into the other house. You haven't talked to your attorney yet. Why haven't you talked to your attorney and that I don't want to move into the other house if you are going to be turning me in for PFA violations. [To which Ms. Kochman replied,] don't violate the PFA and I won't turn you in.

*Id.* at 14.

In contrast to Ms. Kochman's testimony, Appellant initially explained his reasons for communicating with Ms. Kochman as follows:

> There has been – the house has not been paid for for almost a year and I made arrangements with the bank to try to get back into it. They told me unless this paperwork is filled out and signed by her, then they are not going to refinance or they are just going to foreclose on the house because they are not going to try and work with it.

*Id.* at 16. Regarding the incident at Sheetz, Appellant testified:

> I asked [the oldest daughter] to go over and ask her mom if she had talked to her lawyer about that house, because it's

coming up soon to get the paperwork done. She ran over and talked to her mom and ran back over to me.

At that time, [Ms. Kochman] stepped out of her car and walked to the back of her car. I did not step any closer to her, and she started yelling at me about she ain't signing this paperwork. She hasn't talked to her lawyer. She hasn't done this, going on. And all I said was, okay, and me and the girls walked into Sheetz.

*Id.* at 18.

Appellant claims that the foregoing evidence establishes that his intent was to communicate regarding the living arrangements and possible relocation of the parties' children. However, the trial court concluded Appellant's intent was not to discuss matters involving the children's well-being or custody schedule, but instead was to discuss with Ms. Kochman the outstanding issues regarding their jointly-held real property and to impress upon her Appellant's desire to come to a quick resolution. I would reach the same conclusion. The trial court found Ms. Kochman's testimony more credible and we are not permitted to usurp the trial court's credibility determinations when the record supports those determinations. Here, the above-quoted testimony demonstrates that Appellant's intent was to shore up financial plans for the former marital residence. Although, at the time of the communication, Appellant's purported goal was to move into the home and eventually relocate the parties' children, the children's interests were remote and tangential. I agree with the trial court that Appellant communicated with wrongful intent through a third party. Thus, there was

ample support in the record to establish each element of indirect criminal contempt at docket number No. MD-0000197-2013.

Next, I examined the text message sent on July 13, 2013. It read as follows:

> I also sent an email to your lawyer today about the house on Fourth Avenue. The bank said if you get paperwork done I told Cynthia about they will take your name off. So if you could please talk to her about it, me and the girls can start moving into it. Thanks. I will tell them. They said they love you.

N.T., 7/29/2013, at 6.

Again, there is no dispute that Appellant received notice of the orders involved. Moreover, Appellant readily admits that he volitionally sent the text message at issue. Appellant contends that the orders were not clear because he was permitted to communicate via text message for legitimate issues concerning the children. In conjunction, Appellant claims the trial court erred in determining his intent was wrongful because he "could not have been trying to gain an economic advantage because there was no economic value in this home" and "[h]is only motivation for communication regarding this home was for his children." Appellant's Brief at 4.

The trial court determined that the text message "was to discuss with Ms. Kochman the outstanding issues regarding their jointly-held real property and to impress upon her [Appellant's] desire to come to a quick resolution." Trial Court Opinion, 12/13/2013, at 6. I agree and discern no error. While relocation with the children potentially loomed on the horizon,

the main thrust of the communication was financially related. Ms. Kochman testified that the sale of the joint property was related to the parties' divorce. N.T., 7/29/2013, at 5. Appellant was prodding Ms. Kochman to move faster with "the paperwork" to transfer title on the house. Financial issues surrounding the house had to be resolved before relocation could be considered or even discussed. Hence, I would affirm Appellant's conviction for indirect criminal contempt based upon text message communication at docket number No. MD-000212-2013.

Moreover, Appellant knew that, at the time of the subject communications, Ms. Kochman was represented by a divorce attorney, Cynthia Kramer, Esquire. N.T., 7/29/2013, at 9. As the above-mentioned communications show, Appellant had submitted paperwork regarding the sale of the marital home to Attorney Kramer, but then communicated with Ms. Kochman about the home, nevertheless. As previously stated, Ms. Kochman testified, regarding the communication through the parties' oldest daughter, that Appellant said, "You haven't talked to your attorney yet. Why haven't you talked to your attorney[?]" *Id.* at 14. Appellant knew to communicate with Ms. Kochman's attorney, but contacted Ms. Kochman anyway when financial matters surrounding the house were progressing too slowly for him. Accordingly, I find Appellant's communications were harassing in nature and, thus, satisfy wrongful intent under the indirect criminal contempt statute.

Finally, I call attention to the fact that the trial court "noted as part of its findings that [Appellant] had violated the PFA order [at issue] on 11 occasions[.]" Trial Court Opinion, 12/13/2013, at 6. Thus, I take issue with the learned majority's conclusion that "[t]here is no indication in the record that Appellant communicated with Ms. Kochman for the purpose of abusing, stalking, harassing, or threatening her, as prohibited by the PFA petition." Majority Memorandum, at 6. The fact that Appellant was convicted of violating the PFA order at issue 11 times prior to the communications at issue on appeal, only bolsters the trial court's conclusion that Appellant's most recent communications constituted harassment and, therefore, Appellant made them with wrongful intent.

Based upon our deferential standard of review and the evidence presented, I believe there was more than sufficient proof to sustain Appellant's two convictions for indirect criminal contempt. As such, I respectfully dissent from the learned majority and would affirm Appellant's judgment of sentence.[1]

_____

[1] As the learned majority reversed the judgment of sentence, they did not reach Appellant's second issue that his sentence was too severe. As I would affirm Appellant's judgment of sentence, I would reach this issue. However, I would find that the issue has been waived. Appellant questions the discretionary aspect of his sentence. However, in order to preserve this issue for appeal, Appellant was required to raise the issue at his sentencing hearing or in a post-sentence motion. As he did neither, the issue was not preserved. **Commonwealth v. Griffin**, 65 A.3d 932, 935 (Pa. Super. 2013) ("Objections to the discretionary aspects of a sentence are generally waived
*(Footnote Continued Next Page)*

if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed.")