J-A01032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JEANETTE DELEON AND MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID J. SPILLANE | |
| Appellant | No. 734 EDA 2015 |

Appeal from the Judgment of Sentence January 20, 2015
In the Court of Common Pleas of Northampton County
Civil Division at No(s): C0048PF2014000602

BEFORE:  LAZARUS, J., OTT, J., and STEVENS, P.J.E.*

MEMORANDUM BY LAZARUS, J.:                **FILED MARCH 02, 2016**

David J. Spillane (Father) appeals from his judgment of sentence, entered in the Court of Common Pleas of Northampton County, after being convicted of indirect criminal contempt (ICC)[1] for violating a temporary protection from abuse (PFA)[2] order.  After careful review, we affirm.

Father and Appellee, Jeanette DeLeon (Mother), were married in July 2013; they have one minor child, L.S. (Child) (d/b 6/13), born of the marriage.  In December 2013, the parties separated.  Mother and Child

_____

[1] **See** 23 Pa.C.S. § 6114(a) ("Where the police, sheriff or the plaintiff have filed charges of indirect criminal contempt against a defendant for violation of a protection order issued under this chapter . . . or a court-approved consent agreement, the court may hold the defendant in indirect criminal contempt and punish the defendant in accordance with law.").

[2] **See** 23 Pa.C.S. § 6102, *et seq*.

*Former Justice specially assigned to the Superior Court.

moved into Mother's parents' residence. On January 31, 2014, Mother filed a divorce complaint, including a count for custody of Child. On February 18, 2014, the parties entered into a custody agreement, that was adopted as an order of court. Mother retained primary physical custody of Child, Father had partial physical custody and the parties shared legal custody.

On August 25, 2014, the trial court issued a temporary PFA order against Father after Mother accused Father of physically assaulting her during a custody exchange. The PFA order prohibited Father from "abus[ing], harass[ing,] stalk[ing,] or threaten[ing]" Mother or Child and "evicted and excluded [Father from Mother's residence . . . or any other . . . residence where Mother or [Child may live]." Temporary PFA Order, 8/25/14, at ¶ 1. The PFA order forbade Father from contacting Mother, Child and any other protected person "by oral, nonverbal, written or electronic means[.]" *Id.* at ¶ 3. Finally, the PFA order also stated that "[e]xcept for such contact with the minor child[] as may be permitted under paragraph 5 of this order [relating to custody],[3] [Father] is prohibited from having **ANY CONTACT** with Plaintiff [or Child] . . . directly or indirectly, at any location[.]" *Id.* (emphasis in original).[4]

---

[3] Paragraph 5 of the PFA references the parties' child custody order. That custody order states that it supersedes any prior order relating to child custody. *Id.* at ¶ 5.

[4] The PFA clearly states that "[Father] shall have no partial physical custody/visitation rights." *Id.* at ¶ 5.

On September 3, 2014, the trial court extended the temporary PFA order until February 17, 2015, and modified it by adding the following terms:

1. The parties shall adhere to the current order regarding custody of the parties' minor child [which included Father resuming periods of partial physical custody;]

2. The exchange point for transfers of physical custody shall be at the Skippack Police [B]arracks[;]

3. Should Defendant fail to return the minor child to Plaintiff's care at the end of his periods of partial custody, he agrees to forego all future visitation, until such time as the PFA is resolved. He also agrees to pay [a] minimum of $500 to Plaintiff's attorney for fees should he fail to return the minor child and Plaintiff seeks contempt for said failure[; and]

4. Only the parties should be present at the exchange of custody. No third party or relatives.

Modified Temporary PFA Order, 9/3/14.[5]

Subsequently, on October 28, 2014, the parties entered into a final custody agreement, which was made an order of court, where Mother and Father had shared legal custody, Mother retained primary physical custody, and Father had partial physical custody (every other weekend from 6 p.m. Friday until 6 p.m. Sunday). Custody Order, 10/30/14, at ¶ 2. When Mother was receiving custody, she picked the Child up at the Skippack Police

_____

[5] On September 24, 2014, after Mother filed another PFA petition against Father, the court vacated the parties' September 3, 2014 custody order. N.T. PFA Hearing, 9/24/14, at 8. Mother alleged that Father pushed, grabbed and punched her arm when she was taking custody of their child. *Id.* at 14-15.

Barracks; when Father received custody, he picked the Child up at the Hellertown Police Station. *Id.* With regard to holidays the order states, in relevant part:

> 3. **Holidays.** Holidays shall be shared as the parties may agree. If the parties cannot agree, they shall observe the following holiday schedule, which shall prevail over all other periods of physical custody.
>
> *    *    *
>
> e. **New Year's Eve/New Year's Morning.** From 12:00 p.m. on New Year's Eve until 12:00 p.m. on New Year's Day. In even-numbered years, Mother shall have custody. In odd-numbered years, Father shall have custody.

*Id.* at ¶ 2-3. Finally, the custody order stated "the custody *provisions* of this order supersede any and all prior orders, *including any temporary or final Protection from Abuse ('PFA') Orders*." *Id.* at ¶ 10 (emphasis added).

On January 2, 2015, Mother filed the instant indirect criminal contempt complaint[6] alleging that Father violated the temporary PFA order by sending her approximately 10 text messages and appearing at her residence[7] on New Year's Day to regain custody of their daughter. After a contempt

---

[6] Mother filed two other indirect criminal complaints against Father on October 15, 2014 and October 20, 2014. On October 17, 2014, the court found father in contempt for violating the PFA by going to Mother's residence and speaking with her brother (who is also covered under the PFA). Again, on October 23, 2014, Father was found in contempt for failing to return Child to Mother.

[7] At the time, Mother was living with her parents.

hearing, the trial judge found Father in contempt and sentenced him to serve 7 days in prison and pay a $500 fine.[8]  This timely appeal follows.

On appeal, Father presents one issue for our review:  Whether the trial court abused its discretion in finding Appellant in indirect criminal contempt of a PFA order when Appellant acted at all times in compliance with a superseding custody order.

Where a PFA order is involved, "an [indirect criminal contempt] charge is designed to seek punishment for violation of the protective order." **Commonwealth v. Jackson**, 10 A.3d 341, 346 (Pa. Super. 2010) (citation omitted).  To establish indirect criminal contempt, the Commonwealth must prove:  1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent. **Commonwealth v. Walsh**, 36 A.3d 613, 619 (Pa. Super. 2012) (citation omitted).

> [W]hen reviewing a contempt conviction, much reliance is given to the discretion of the trial judge.  Accordingly, [the appellate court is] confined to a determination of whether the facts support the trial court decision.  **Williams v. Williams**, [] 681 A.2d 181, 183 (Pa. Super. 1996)[.]  We will reverse a trial

_____

[8] The court also ordered that the temporary PFA order remain in full force and effect.

court's determination only when there has been a plain abuse of discretion.

***Commonwealth v. Kolansky***, 800 A.2d 937, 939 (Pa. Super. 2002) (some citations omitted).

Instantly, Father contends that the portion of the parties' custody order regarding holidays with their daughter is "poorly written and ambiguous . . . and makes it unclear if [he] had custody of his daughter for New Year's Eve or New Year's Day." Appellant's Brief, at 9. He claims that all of his actions were motivated by his desire to protect his custody rights and not "with the wrongful intent" necessary to violate a PFA. Finally, he asserts that the PFA was also unclear "insofar as it was superseded by the Custody Order." ***Id.*** at 10.

Initially, we note that the language in the parties' final custody order clearly states that a parent assumes custody of Child from **12:00 p.m.** on New Year's **Eve** until **12:00 p.m.** on New Year's **Day**. However, even if Father found this language ambiguous, the PFA clearly indicates that he was excluded from Mother's residence. Moreover, Father was prohibited from having any contact with Mother or Child except for contact necessary for him to exercise his partial custody rights. The custody order is consistent with the PFA's residential restriction insofar as it states that when Father receives custody, he *shall* pick up the Child at the Hellertown Police Department.

With regard to his intent to violate the PFA, Father testified that despite the parties' agreement that the drop off location for custody exchanges is to occur only at Hellertown Police Station or the Skippack State

Police Station, he showed up at Mother's residence in contravention of the custody arrangement. N.T. Indirect Criminal Contempt Hearing, 1/20/15, at 41. Moreover, Father admitted that he had been told on numerous occasions by Mother, Mother's parents, as well as the police not to come to Mother's house. *Id.* Under such circumstances, we find that the facts support the trial court's determination that Father had the wrongful intent to violate the PFA. *Kolansky*, *supra*. *See Commonwealth v. Brumbaugh*, 932 A.2d 108, 111 (Pa. Super. 2007) ("wrongful intent can be imputed by virtue of the substantial certainty that [one's actions will be] in violation of the PFA Order."); *Commonwealth v. Haigh*, 874 A.2d 1174 (Pa. Super. 2005) (judges should use common sense and consider context and surrounding factors in making determination as to whether violation of a PFA is truly intentional).

Finally, we find no merit to Father's claim that the custody order superseded the PFA order. In *Dye for McCoy v. McCoy*, 621 A.2d 144, (Pa. Super. 1993), our Court stated

> [S]ection 6108(a)(4) [of the Protection from Abuse Act] precludes a custody award, pre-existing or following the PFA Order, from nullifying the PFA Order as its purpose is to assure the safety of a child or children above and beyond any other Orders or relationships involving the children. To hold otherwise would have the effect of emasculating the central and extraordinary feature of the PFA which is to prospectively control and prevent domestic violence[.]"

*Id.* at 145. Accordingly, while certain provisions relating to custody of Child may take precedence over portions of the parties' PFA order, it by no means

- 7 -

gave Father permission to go to Mother's residence in complete derogation of the PFA order and its purpose of protecting Mother and Child.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/2/2016