J-S36021-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARIEN CHARLES ROBINSON | : | |
| | : | |
| Appellant | : | No. 768 MDA 2024 |

Appeal from the Judgment of Sentence Entered January 5, 2024
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000726-2023

BEFORE: LAZARUS, P.J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:     **FILED: DECEMBER 19, 2024**

Darien Charles Robinson appeals from the judgment of sentence entered following his conviction for criminal trespass[1] following a non-jury trial. Robinson challenges the sufficiency and the weight of the evidence and the discretionary aspects of his sentence. We affirm.

The Commonwealth charged Robinson with criminal trespass and harassment following his entry into the home of Danielle Wertz ("Victim"). Evidence of the following was presented at trial.

Victim testified that on May 26, 2023, she was at her home by herself taking a shower when she heard the bathroom door and the shower curtain open. N.T. Trial, 11/1/23, at 5-6. She then saw Robinson standing there staring at her. *Id.* at 6. Robinson made a sexual comment to her, and she

---

[1] 18 Pa.C.S.A. § 3503(a)(1)(i).

screamed for him to leave the house. *Id.* She stated that she had left her front door unlocked since it was a nice day, and she frequently left her door unlocked because she has "good neighbors." *Id.* at 6, 18.

When Victim saw Robinson in her bathroom, she grabbed her phone off the bathroom sink, wrapped herself in a towel, and followed Robinson down the stairs while he exited her house. *Id.* at 6-7. Once outside while still in a towel, Victim called her mother, who lived close by. *Id.* She then called 911 and took a photograph of Robinson's vehicle from her front porch as he drove away from her residence. *Id.* at 6-8. Victim's mother arrived at her house within two minutes. *Id.* at 9. The Commonwealth played Victim's 911 call to the court. *Id.* at 9-10.

Victim stated that she had previously been in an "on-and-off" relationship with Robinson for five years, but she had stopped all contact with him approximately seven to nine months prior to this incident. *Id.* at 11-12, 20. She stated that she had moved and changed her phone number because she did not want Robinson to know where she was. *Id.* at 17. Victim testified that she never gave Robinson her new address and neither she nor her fiancé ever invited him over to their house. *Id.* at 11.

Victim's mother testified that when she arrived at Victim's house, Victim was "hysterical." *Id.* at 24. Victim's mother also stated that Robinson showed up at her house looking for Victim a few months prior to this incident and she "suggested him to just leave [Victim] alone." *Id.* at 23.

Officer William Hagemeyer, Jr. was the responding police officer on the scene and testified that when he arrived at Victim's house, Victim was "very hysterical, upset" and had been crying. *Id.* at 27. Victim told Officer Hagemeyer what happened and showed him the photograph that she took of Robinson's vehicle. *Id.* He was able to zoom in on the photograph and read the vehicle's registration plate, which he traced back to Robinson. *Id.* at 28. Officer Hagemeyer did not recall the exact details that Victim told him of her past relationship with Robinson, but stated "she had said that she ended the whatever relationship that they had had and she had been trying to avoid contact with him for a period time, and he persisted and was reaching out to family members and friends to try to find her." *Id*. at 29.

Robinson testified that he went to Victim's house on May 26, 2023, with the intention of retrieving some of his belongings, including his PlayStation, TVs, jewelry, clothes, and alligator. *Id.* at 36-37. He stated that he had lived in Victim's previous house with her and had left his belongings there when he was picked up by the police on a felony warrant on unrelated charges. *Id.* at 35, 36. Robinson said that when he approached Victim's house on May 26, 2023, he asked Victim about his belongings. *Id.* at 38. He testified that he did not enter Victim's house. *Id.* at 37-38. Robinson stated Victim became upset and told him to leave. *Id.* at 38. He said that he left when Victim told him to leave. *Id.*

At the conclusion of the trial, the Commonwealth withdrew the charge of harassment, and the court found Robinson guilty on the criminal trespass

charge. *Id.* at 43-44. The court sentenced Robinson to 16 months to six years' incarceration, with credit for time served, and various conditions for parole. Robinson filed a post-sentence motion. After hearing argument on the motion, the court denied it. This appeal followed.

Robinson raises the following issues:

1. Whether the Commonwealth presented sufficient evidence of all the elements of the charged offense, such that he could be proven guilty of [c]riminal [t]respass?

2. Whether [Robinson's] conviction is against the weight of the evidence, such that he could not be proven guilty of [c]riminal [t]respass?

3. Whether the sentencing court abused its discretion by imposing a manifestly excessive sentence without sufficiently considering the fundamental norms underlying the sentencing process?

Robinson's Br. at 8.

Robinson first argues the evidence was insufficient to establish criminal trespass. *Id.* at 12. He argues that the Commonwealth failed to prove he entered Victim's house. *Id.* He points to his testimony that he did not enter the home and was only there to retrieve his belongings. *Id.* Robinson maintains that Victim "admitted to making false statements to police officers and in her written report about her and [Robinson's] relationship" and "significantly downplayed her relationship with [him] to officers on the scene." *Id.* at 12-13. He concludes that Victim's "testimony was insufficient to find him guilty of criminal trespass." *Id.* at 13.

The sufficiency of the evidence is a question of law. Therefore, "[o]ur standard of review is *de novo*, and our scope of review is plenary." ***Commonwealth v. Mikitiuk***, 213 A.3d 290, 300 (Pa.Super. 2019). When reviewing a challenge to the sufficiency of the evidence, we "must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." ***Commonwealth v. Feliciano***, 67 A.3d 19, 23 (Pa.Super. 2013) (*en banc*) (citation omitted). "Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail." ***Id.*** (citation omitted). This standard applies equally where the Commonwealth's evidence is circumstantial. ***Commonwealth v. Patterson***, 180 A.3d 1217, 1229 (Pa.Super. 2018). The factfinder, "while passing on the credibility of the witnesses and the weight of the evidence — is free to believe all, part, or none of the evidence." ***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa.Super. 2017). This Court "may not substitute our judgment for that of the factfinder." ***Commonwealth v. Griffith***, 305 A.3d 573, 576 (Pa.Super. 2023), *appeal denied*, 319 A.3d 503 (Pa. 2024).

A person is guilty of criminal trespass where "knowing that he is not licensed or privileged to do so, he . . . enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion[.]" 18 Pa.C.S.A. § 3503(a)(1)(i). An occupied

- 5 -

structure is "[a]ny structure, vehicle or place adapted for overnight accommodations of persons, or for carrying on business therein, whether or not a person is actually present." 18 Pa.C.S.A. § 3501. Thus, the Commonwealth must prove that the defendant (1) knew he was not licensed or privileged to enter the premises and (2) entered the premises. **See Commonwealth v. Jackson**, 10 A.3d 341, 346 (Pa.Super. 2010).

Here, the trial court found that the evidence was sufficient to support Robinson's conviction for criminal trespass. It found Victim's testimony that Robinson entered her residence to be credible over Robinson's testimony that he did not enter the house. **See** Trial Court Opinion, filed 1/11/24, at 5. At the conclusion of the trial, the court explained its reasoning:

> Mr. Robinson, I have to be honest with you. This--this isn't even a close call. It's not a question as to whether or not the Commonwealth has proven you guilty beyond a reasonable doubt, the [c]ourt's satisfied that they've proven you guilty beyond all doubt.
>
> It is--it is clear that you and the victim had a long term on again/off again relationship. It's also clear that she minimized the nature and extent of that relationship when she was talking to the police. But it's also clear to the [c]ourt that that relationship had ended in 2022. That she told you the relationship was over. That her fianc[é] told you to leave her alone. That her mother told you to leave her alone. That she moved to an address that she did not give you so that you could not find her, and she changed her phone number so that you couldn't communicate with her any longer.
>
> It is also clear that you continued to question and harass her friends and family trying to find out where she lived. That you showed up at her house uninvited. That you walked into that house uninvited. Into her home and into the bathroom where she was taking a shower, and candidly your

> claim that you simply came to the house and spoke to her on the front porch is really not believable.
>
> The--the [c]ourt finds that the credible testimony of each of the Commonwealth's witnesses has established your guilt beyond a reasonable doubt[.]

N.T. Trial at 44-45. In finding Victim to be credible, the court also considered the testimony of other witnesses that "at the time of the incident[, Victim] was hysterical and upset and shaking [which] all corroborates that it happened exactly the way that [Victim] said it did[.]" *Id.* at 49.

The trial court's findings are supported by the record, and we agree with it that the evidence was sufficient. The trial court, as factfinder, was free to "believe all, part, or none of the evidence," and it was solely the court's purview to determine the credibility of witnesses. *Miller*, 172 A.3d at 640. The court found Victim's testimony credible that Robinson entered her home. The evidence showed that Robinson knew that he was not licensed or privileged to enter the home, as Victim had cut off contact with him months prior to the incident, did not inform him of her new address, and conveyed through family members that she did not want to see him. Viewed in the light most favorable to the Commonwealth, the evidence was sufficient to support the factfinder's conclusion that Robinson was guilty of criminal trespass.

Robinson next argues that the verdict was against the weight of the evidence. Robinson's Br. at 13. He incorporates the same argument that he set forth in his sufficiency of evidence challenge and requests that a new trial be granted. *Id.*

"We review a trial court's order denying a weight challenge for an abuse of discretion." ***Commonwealth v. Fallon***, 275 A.3d 1099, 1107 (Pa.Super. 2022). Because the trial court heard the testimony firsthand, we must "give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." ***Id.*** (citation omitted). "To successfully challenge the weight of the evidence, a defendant must prove the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Commonwealth v. Windslowe***, 158 A.3d 698, 712 (Pa.Super. 2017) (internal quotation marks and citation omitted). Further, "[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." ***Commonwealth v. Champney***, 832 A.2d 403, 408 (Pa. 2003) (citation omitted). "When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited." ***Commonwealth v. Bowen***, 55 A.3d 1254, 1262 (Pa.Super. 2012) (citation omitted).

Here, we cannot say that the trial court abused its discretion in finding the verdict did not shock the conscience. The court was free to believe all, part, or none of the evidence presented in judging the credibility of the witnesses and credited the Commonwealth's witnesses. ***Champney***, 832 A.2d at 408. No relief is due.

Robinson's final argument is that his sentence was manifestly excessive. This goes to the discretionary aspects of his sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and [the issue] must be considered a petition for permission to appeal." *Commonwealth v. Conte*, 198 A.3d 1169, 1173 (Pa.Super. 2018). Before reviewing the merits of Robinson's claim, we must determine whether:

> (1) the appeal was timely; (2) the appellant has preserved his issue; (3) his brief includes a concise statement of the reasons relied upon for allowance of an appeal with respect to the discretionary aspects of his sentence; and (4) the concise statement raises a substantial question whether the sentence is inappropriate under the Sentencing Code.

*Commonwealth v. Green*, 204 A.3d 469, 488 (Pa.Super. 2019); *see also* Pa.R.A.P. 2119(f) (stating that an appellant who challenges the discretionary aspects of a sentence "shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence").

Here, Robinson timely appealed and preserved his challenge in a post-sentence motion. He has included a Rule 2119(f) statement in his brief and raises a substantial question claiming that his sentence is excessive and unreasonable, and the court overlooked mitigating factors. *See* Robinson's Br. at 11, 14-15; *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa.Super. 2015) (*en banc*) ("an excessive sentence claim – in conjunction with an assertion that the court failed to consider mitigating factors – raises a

substantial question") (citation omitted). Therefore, we will address Robinson's sentencing claim on the merits.

Robinson argues that the court failed to consider his hardships as a child and the lapse in time between his current offense and most of his previous criminal offenses. Robinson's Br. at 15. He further argues that the court placed too much weight on the nature of the crime and the parties' prior relationship. *Id.* He concludes that his sentence "at the top end of the standard range with a [six]-year parole tail, more than [four] times his minimum[, was] manifestly excessive." *Id.*

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Edwards*, 194 A.3d 625, 637 (Pa.Super. 2018) (citation omitted). An abuse of discretion occurs where "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Id.* (citation omitted). In imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b).

Where the court has the benefit of a pre-sentence investigation ("PSI") report, we presume the court was aware of all appropriate sentencing factors and considerations and consider the requirement that the court place its reasoning on the record to be satisfied. *Commonwealth v. Johnson-*

*Daniels*, 167 A.3d 17, 26 (Pa.Super. 2017). In conducting appellate review, we may not reweigh the sentencing factors and impose our own judgment in place of that of the trial court. *See Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa.Super. 2009).

Here, the court reviewed the PSI report at the sentencing hearing, which included information about Robinson's criminal history, education, employment history, upbringing with drug-addicted parents, and his own drug use. N.T. Sentencing, 1/5/24, at 3-7. The court also reviewed Robinson's prior record score and offense gravity score. *Id.* at 7. It also heard defense counsel's argument regarding Robinson's difficult childhood, in which he highlighted how Robinson's lack of parental care led him into crime. *Id.* at 8-9. Robinson testified at the sentencing hearing that he wanted to "put [the incident] behind" him and noted that his criminal record did not include violent crime and that Victim was never in danger of him. *Id.* at 10.

Prior to imposing sentence, the court stated the following:

> The [c]ourt wants to make clear that the sentence it intends to impose balances first the family and personal history that the [c]ourt is now aware of, including Mr. Robinson's difficult childhood, but, ultimately, in imposing a sentence, the [c]ourt considers the following four factors:
>
> First, [Robinson's] failure to accept responsibility or demonstrate remorse in the face of clear evidence of his guilt. Secondly, that this trespass was outside the heartland of a typical trespass, in that [Robinson] entered an occupied residential structure and [Robinson's] actions were a particularly egregious invasion of the victim's privacy as he then confronted her while she was naked in the shower. It was clear at the time of trial that [Robinson's] actions have caused particular upset and emotional distress to the victim

- 11 -

[]. And, lastly, [Robinson] was on parole supervision for another felony at the time of this offense.

The [c]ourt finds that the totality of these factors would justify a sentence in the aggravated range. However, the [c]ourt declines to impose a sentence in the aggravated range but will impose a sentence at the top of the standard range. The [c]ourt finds that any lesser sentence would depreciate the seriousness of the offense.

*Id.* at 12-13.

The court did not abuse its discretion. The record belies Robinson's assertion that the court failed to adequately consider mitigating factors. The court took into consideration the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant, as required under 42 Pa.C.S.A. § 9721(b). Additionally, because the sentencing court considered the PSI report, we presume the court was aware of all appropriate sentencing factors. *See Johnson- Daniels*, 167 A.3d at 26. Because the court sentenced Robinson within the standard range of the sentencing guidelines, albeit at the high end of the range, we cannot conclude that the sentence is on its face unduly excessive or unreasonable. *See Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa.Super. 2010) (stating "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code").

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/19/2024