J-S20033-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
DAVID ROLAND SNYDER :
:
Appellant : No. 1454 WDA 2018

Appeal from the PCRA Order Entered September 6, 2018
In the Court of Common Pleas of Potter County
Criminal Division at No(s): CP-53-CR-0000020-2011

BEFORE: GANTMAN, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.E.: FILED JANUARY 13, 2020

Appellant, David Roland Snyder, appeals from the order entered in the

Potter County Court of Common Pleas, which denied his petition brought

pursuant to the Post-Conviction Relief Act ("PCRA"), at 42 Pa.C.S.A. §§ 9541-

9546. We affirm and grant counsel's petition to withdraw.

A previous decision of this Court set forth the relevant facts and

procedural history of the case as follows:

> During the preliminary hearing, the Commonwealth
> provided evidence establishing that an undercover
> state police officer made purchases of various
> quantities of drugs from Dustin Hurlburt and that Mr.
> Hurlburt and others were supplied with drugs by
> [Appellant] and that these individuals then distributed
> the drugs in Potter County. The Commonwealth
> provided further testimony from Jorge Stuart as well
> as other witnesses to support the allegation that
> [Appellant] was involved in a conspiracy to distribute
> cocaine in Potter County between December 2005 and
> November [2009].

Specifically, undercover Pennsylvania State Trooper, Nicholas J. Madigan, testified that on December 15, 2005, January 11, 2006, February 20, 2006, and April 21, 2006[,] he purchased cocaine from [c]o-defendant Dustin Hurlburt in Ulysses, Potter County, Pennsylvania. Dustin Hurlburt also testified and confirmed that he did, in fact, ma[k]e four sales of cocaine to Trooper Madigan and that the drugs were obtained from [Appellant]. Dustin Hurlburt also testified that [Appellant] was aware that Mr. Hurlburt was selling the cocaine and that he purchased cocaine from [Appellant] approximately 60 times. Mr. Hurlburt further testified that two other dealers were receiving cocaine from [Appellant] and were likewise selling it in Potter County. Mr. Hurlburt accompanied [Appellant] to New Jersey on two to three occasions to pick up the drugs from [Appellant's] supplier, Jorge Stuart.

Eric Luce testified that he accompanied [Appellant] to New Jersey or went alone on behalf of [Appellant] approximately 75 to 100 times to retrieve cocaine from the distributor in New Jersey. When the cocaine was brought back to [Appellant's] home [in Whitesville, New York], he would weigh and distribute the drugs. Mr. Luce lived primarily in Genesee, Potter County, Pennsylvania and would often receive an ounce of cocaine for making the trip to New Jersey. Subsequently, [Mr.] Luce would use or sell the cocaine. Mr. Luce testified that approximately 10-15 individuals were distributing drugs obtained from [Appellant]. Mr. Luce recounts car trips to New Jersey to retrieve the drugs would necessitate driving through Tioga County, Pennsylvania which is adjacent to Potter County.

Co-defendant Jorge Stuart testified that [Appellant] or his associates came to pick up drugs supplied by him in New Jersey once per month from 2002 until 2009. Mr. Stuart further testified that [Appellant] told him that he was selling drugs "up here." As to Mr. Stuart's reference to "up here," the [trial c]ourt notes the preliminary hearing took place at the Magisterial

- 2 -

> District Judge Delores Bristol's office in Galeston, Potter County, Pennsylvania.
>
> Following the preliminary hearing, the...charges were bound over to the Potter County Court of Common Pleas. On April 4, 2011, Appellant filed an omnibus pretrial motion to quash the criminal information arguing the Commonwealth failed to make a prima facie showing that Appellant delivered or possessed a controlled substance or otherwise engaged in criminal conduct or conducted an unlawful financial transaction within the Commonwealth, specifically Potter County. Thus, Appellant argued that the trial court lacked subject matter jurisdiction to hear the criminal matters at issue. The trial court heard argument on the motion on May 2, 2011. In an opinion and order filed on July 7, 2011, the trial court denied relief. The trial court determined that "there existed an implicit conspiracy between [Appellant], Mr. Hurlburt and others to distribute cocaine in Potter County." Thus, the trial court opined "[Appellant] is vicariously liable as a coconspirator for the actions of Mr. Hurlburt or others."

Commonwealth v. Snyder, 503 WDA 2012, 2013 WL 11254800. unpublished memorandum at 1-3 (Pa.Super. filed August 28, 2013) (quoting Trial Court Opinion, filed July 7, 2011, at 1-3) (internal citations and footnotes omitted)). A two-day jury trial began on October 17, 2011.

> During the trial, the Commonwealth presented the testimony of Dustin Hurlburt, Gabriel Barber, Adam Johnson, Gregory Lampman, Wayne Hess, Kenneth Davenport and Ryan Schrader who all relayed that within the relevant time frame, December of 2005 until November of 2009, they had received a vast amount of cocaine and/or heroin from [Appellant]...initially at his Ulysses, Pennsylvania residence and subsequently in Whitesville, New York and then consumed and/or sold said drugs in Potter County, Pennsylvania.
>
> Specifically, Dustin Hurlburt testified that from 2004 until 2007 he had received cocaine from [Appellant] approximately sixty times ranging in the amount of three

and one-half grams to two ounces on each transaction for the purpose of selling the cocaine in Potter County. Mr. Hurlburt personally conducted four transactions in Potter County wherein he sold cocaine [he] had received from [Appellant] to Trooper Nicholas Madigan of the Pennsylvania State Police, who was working undercover at the time. The four transactions between Trooper Madigan and Dustin Hurlburt are represented as Counts I through IV on the Criminal Information.

Gabriel Barber testified that...between 2004 or 2005 up until the end of 2006 or 2007 he had received cocaine from [Appellant] at both [Appellant's] residence in Ulysses and in Whitesville and further testified that at times [Appellant] would bring the cocaine to Mr. Barber's residence in Ulysses, Potter County, Pennsylvania. Mr. Barber further relayed that he sold the cocaine in the Ulysses, Potter County area.

Adam Johnson testified that he began receiving cocaine from [Appellant] in 2002 and began selling the cocaine he received in 2004 or 2005 up until 2007. Mr. Johnson further relayed that he visited [Appellant] two to three times a week where he would receive anywhere from one-eighth of an ounce, or an "eight ball," to an ounce of cocaine and that overall he estimates he received over twelve ounces of cocaine from [Appellant]. He would sell the cocaine in Northern Potter County. Mr. Johnson stated that [Appellant] was aware [Mr. Johnson] was selling the cocaine in Potter County.

Adam Johnson further testified he began selling heroin supplied by [Appellant] in 2006 or 2007 and indicated that on one occasion [Appellant] had approximately forty-four grams of heroin.

Gregory Lampman testified that he began receiving cocaine from [Appellant] for personal use in 2004 and later began to receive over an ounce and was selling the cocaine to three or four people in the Coudersport, Potter County area and further indicated that [Appellant] would deliver cocaine to him personally at his home in Ulysses, Potter County, Pennsylvania. Mr. Lampman further relayed that he had given [Appellant] $14,000.00 in cash at his home in Whitesville for the purposes of buying cocaine. In return for

this money, Mr. Lampman received five ounces of cocaine collectively from [Appellant] on three separate occasions.

Wayne Hess, resident of Westfield, Pennsylvania, testified that he purchased cocaine from [Appellant] in amounts ranging from one-eighth of an ounce to an ounce approximately twenty to thirty times between 2000 and 2008.

Kenneth Davenport testified that between 2005 and 2007, he purchased cocaine from [Appellant] ranging from [one-eighth of an ounce] to an ounce approximately once a month.... Mr. Davenport relayed that he began purchasing cocaine from [Appellant] at his home in Ulysses, Potter County and later in Independence and Whitesville, New York.

Ryan Schrader testified that for approximately eighteen months to two years between 2004 and 2006, he would receive cocaine from [Appellant]. Mr. Schrader testified he received the cocaine directly at [Appellant's] residence and that sometimes [Appellant] would drop off the cocaine at Mr. Schrader's residence in Ulysses, Potter County, Pennsylvania. Mr. Schrader further relayed that during this period he purchased cocaine in amounts ranging from one-half ounce to four ounces and he, in turn, distributed the cocaine in both Pennsylvania and New York. Mr. Schrader also testified that he would occasionally deliver cocaine on behalf of [Appellant] to Dustin Hurlburt in Ulysses, Potter County, Pennsylvania.

\* \* \*

... During the trial, the Commonwealth presented the testimony of Eric Luce who relayed that within the relevant time frame, beginning in 2007, until his son was born in November of [2009], he had received approximately thirty grams of heroin over approximately forty to fifty transactions from [Appellant] at his home in Whitesville, New York for his own personal use. Also during the relevant time period, Adam Johnson testified that [Appellant] had provided him heroin to sell on several occasions and further observed a container of heroin he personally observed to weigh forty-four grams. Furthermore, Kenneth Davenport

testified that in 2007 he received from [Appellant] on two dozen occasions one to two grams of heroin for his personal use.

(Trial Court Opinion Rule 1925(a) Opinion, filed September 21, 2012, at 4-6, and at 14). The jury convicted Appellant of 4 counts of delivery of a controlled substance cocaine, and 1 count each of possession with intent to deliver ("PWID") or delivery of a controlled substance cocaine, PWID or delivery of a controlled substance heroin, conspiracy cocaine delivery, conspiracy heroin delivery, and dealing in proceeds of unlawful activities. The court initially sentenced Appellant to an aggregate term of imprisonment of 34 to 68 years on November 30, 2011. Appellant filed a timely post-sentence motion, and on February 17, 2012, the trial court modified the sentence to an aggregate term of 27 to 54 years' incarceration.

> [Appellant] filed an appeal to the Superior Court on March 13, 2012[,] which was decided by the Superior Court on August 28, 2013. Essentially [Appellant] had claimed that the [c]ourt had erred in failing to dismiss the case after hearing his Omnibus Pretrial Motion and after his Motion for Judgment of Acquittal. [Appellant] alleged that most if not all of the drug delivery crimes occurred in New York State and that he never dealt drugs in Pennsylvania. Accordingly, [Appellant] alleged that the [c]ourt lacked jurisdiction over him and that the amount of drugs for which he was convicted of distributing was not proven since there was no evidence of said drug distribution in Pennsylvania. Additionally, [Appellant] alleged the [c]ourt failed to merge the sentences but rather imposed a separate sentence for the each crime. Finally [Appellant] asserted that the sentence imposed by the [c]ourt was in error and an abuse of discretion.
>
> On August 28, 2013, the Superior Court issued its decision after considering five arguments espoused by [Appellant],

three of which are relevant in the subject PCRA. First as to whether a Judgment of Acquittal should have been granted the Superior Court found that the record supported the fact that [Appellant] had engaged in a narcotics distribution conspiracy spanning into Potter County, Pennsylvania and opined that no relief was warranted in that regard. Secondly, [Appellant] argued that the [c]ourt lacked jurisdiction over him since any crimes which he may have committed had occurred outside of Pennsylvania. Again the Superior Court determined that this claim lacked merit as it was akin to the first issue and there was ample evidence that [Appellant] and his co-conspirators delivered narcotics in Potter County, Pennsylvania. [Appellant's] third issue dealt with a Rule 600 issue and is not relevant to the subject PCRA. [Appellant's] fourth issue concerned the imposition of mandatory sentencing…which [was] based upon the quantities of drugs delivered. The Superior Court concluded that the record supported the claims asserted by the Commonwealth as to the amount of cocaine and heroin which [Appellant] was involved. Finally, [Appellant] claimed that Count 5 should have merged with Counts 1-4 for the purposes of sentencing. The Superior Court ultimately affirmed the judgment of sentence.[1]

Thereafter on March 23, 2015, [Appellant] filed a PCRA [petition] and by joint stipulation the Commonwealth and [Appellant] agreed that the [c]ourt would impose a new sentence based upon the United States Supreme Court's determination that the mandatory sentencing provisions were unconstitutional under Alleyne v. United States, [570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013)]. On October 22, 2015, [Appellant] was resentenced to 22 years and 9 months to 45 years and 6 months. The sentence imposed on each count was at the low end of the standard range.

On November 23, 2015[, Appellant] again appealed to the

_____

1 Our Supreme Court denied Appellant's petition for allowance of appeal on March 24, 2014. Commonwealth v. Snyder, 83 A.3d 1079 (Pa.Super. 2013) (unpublished memorandum), appeal denied, 624 Pa. 696, 87 A.3d 815 (2014).

> Superior Court. In [Appellant's] Statement of [Errors] Complained of on Appeal he averred that the [c]ourt imposed an illegal sentence since the jury should have determined the exact amount of drugs involved which said determination would then be used in preparing the sentencing guidelines. [Appellant's] counsel filed an Anders[2] brief and Petition to Withdraw asserting that the appeal lacked merit. On September 14, 2016, the Superior Court granted the Motion to Withdraw and affirmed the Judgment of Sentence.
>
> On September 13, 2017, [Appellant] filed the current PCRA [petition]. [Appellant] was appointed counsel by the [c]ourt and [Appellant's] counsel filed an Amended PCRA Petition on February 12, 2018. On June 7, 2018, the [c]ourt held a hearing on [Appellant's] PCRA [petition]. ...

(PCRA Court Opinion, filed September 6, 2018, at 1-3). The PCRA court denied relief on September 6, 2018. Appellant timely filed a notice of appeal on October 4, 2018. On October 11, 2018, the PCRA court ordered Appellant to file a Rule 1925(b) statement. On November 1, 2018, counsel filed a Rule 1925(c)(4) statement of intent to file an "Anders brief."

On March 5, 2019, appellate counsel filed with this Court a petition to withdraw representation and an "Anders" brief. In the context of a PCRA petition and request to withdraw, however, the appropriate filing is a "no-merit" letter/brief. Commonwealth v. Turner, 518 Pa. 491, 544 A.2d 927 (1988); Commonwealth v. Finley, 550 A.2d 213 (Pa.Super. 1988) (en banc). But see Commonwealth v. Fusselman, 866 A.2d 1109, 1111 n.3

_____

2 Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

(Pa.Super. 2004), appeal denied, 584 Pa. 691, 882 A.2d 477 (2005) (stating Superior Court will accept Anders brief in lieu of Turner/Finley no-merit letter, where counsel seeks to withdraw on PCRA appeal).[3]

"Before an attorney can be permitted to withdraw from representing a petitioner under the PCRA, Pennsylvania law requires counsel to file and obtain approval of a 'no-merit' letter pursuant to the mandates of Turner/Finley." Commonwealth v. Karanicolas, 836 A.2d 940, 947 (Pa.Super. 2003) (emphasis in original).

> [C]ounsel must...submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which the petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

Commonwealth v. Wrecks, 931 A.2d 717, 721 (Pa.Super. 2007). Counsel must also send to the petitioner a copy of the "no-merit" letter or brief and petition to withdraw and advise the petitioner of his right to proceed immediately either pro se or with new counsel. Id. To withdraw, counsel must assure this Court of counsel's substantial compliance with these technical requirements. Commonwealth v. Muzzy, 141 A.3d 509, 510-11 (Pa.Super. 2016).

_____

[3] Rule 1925(c)(4) mentions only Anders and Santiago, which theoretically relate to direct appeals. Nevertheless, Rule 1925(c)(4) is often utilized in PCRA appeals also. No doubt we continue to see PCRA appellate briefs designated as Anders briefs simply because the rule does not refer to Turner and Finley.

Instantly, counsel filed an "Anders" brief on appeal and a petition to withdraw as counsel. Although designated as an Anders brief, counsel's brief is a Turner/Finley brief. Counsel's brief is limited in its discussion of the issue on appeal but it incorporates via attachment the amended PCRA petition and accompanying brief, which thoroughly discussed the issues Appellant wished to raise and explained how the issues had no merit. In counsel's petition to withdraw, counsel states that he sent Appellant another copy of the PCRA brief, a copy of the petition to withdraw, and a letter advising Appellant of his right to proceed immediately pro se or with private counsel to raise additional points he deems worthy of review. Thus, appellate counsel has substantially complied with the Turner/Finley requirements. See Muzzy, supra; Karanicolas, supra. Accordingly, we proceed to an independent evaluation. See Turner, supra at 494-95, 544 A.2d at 928-29 (stating appellate court must conduct independent analysis and agree with counsel that appeal is frivolous). Appellant has not responded to counsel's brief and petition.

Counsel raises one issue in the Turner/Finley brief:

> WHETHER THE [PCRA] COURT ERRED IN DENYING APPELLANT'S PCRA PETITION?

(Turner/Finley Brief at 3).

Appellant argues the sentences imposed for counts one through four (delivery of cocaine), for four individual sales, occurred between December 2005 and November 2009, while count five represented an aggregate charge

for drug sales during the same period. Appellant contends separate sentences for these convictions violated the double jeopardy clauses of the United States and Pennsylvania Constitutions because count five covered the same time period and the same crimes. Appellant contends the sentences on counts one through four should have been subsumed in count five under the merger doctrine.

Appellant also avers his sentences at counts six and eight are illegal because the Commonwealth did not establish Appellant had sold between 50 to 100 grams of heroin within Pennsylvania. Appellant claims the Commonwealth only proved Appellant sold 10 grams of heroin within Pennsylvania, and his sentences at counts six and eight should be reduced accordingly.

Appellant submits appellate counsel was ineffective for failing to raise on direct appeal these issues of double jeopardy (merger) as well as the illegal sentences on counts six and eight. Appellant concludes the sentences at counts one through four should be vacated completely, the sentences at counts six and eight should be vacated, and this Court should remand for resentencing. We disagree.

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. Commonwealth v. Conway, 14 A.3d 101, 109 (Pa.Super. 2011), appeal denied, 612 Pa. 687, 29 A.3d 795

(2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. Commonwealth v. Boyd, 923 A.2d 513, 515 (Pa.Super. 2007), appeal denied, 593 Pa. 754, 932 A.2d 74 (2007). We give no similar deference, however, to the court's legal conclusions. Commonwealth v. Ford, 44 A.3d 1190, 1194 (Pa.Super. 2012). Traditionally, credibility issues are resolved by the trier of fact who had the opportunity to observe the witnesses' demeanor. Commonwealth v. Abu-Jamal, 553 Pa. 485, 527, 720 A.2d 79, 99 (1998), cert. denied, 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 38 (1999). Where the record supports the PCRA court's credibility resolutions, they are binding on this Court. Id.

To be eligible for relief under the PCRA, the petitioner must plead and prove his conviction resulted from one or more of the grounds set forth in 42 Pa.C.S.A. § 9543; a petitioner must also plead and prove his allegation of error has not been previously litigated or waived. Commonwealth v. Bridges, 584 Pa. 589, 594, 886 A.2d 1127, 1130 (2005) (citing 42 Pa.C.S.A. § 9543(a)(3)). "An issue has been previously litigated if the highest appellate court in which the petitioner was entitled to review as a matter of right has ruled on the merits of the issue." Bridges, supra at 594, 886 A.2d at 1130 (citing 42 Pa.C.S.A. § 9544(a)(2)). "A claim previously litigated in a direct appeal is not cognizable under the PCRA." Commonwealth v. Hutchins, 760 A.2d 50, 55 (Pa.Super. 2000). Moreover,

> A PCRA petitioner cannot obtain PCRA review of previously litigated claims decided adversely to him in his direct appeal

> simply by presenting those claims again in a PCRA Petition and setting forth new theories of relief in support thereof. The purpose of the PCRA is not to provide a defendant with a means of relitigating the merits of issues long since decided on direct appeal.

Id. (internal citations and quotation marks omitted).

Merger of sentences is governed generally by Section 9765 of the Sentencing Code, which provides:

> § 9765.  Merger of sentences
>
> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense.  Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765.  See also Commonwealth v. Baldwin, 604 Pa. 34, 985 A.2d 830 (2009) (recognizing General Assembly's prerogative to determine when offenses merge for sentencing and rejecting claim that Section 9765 elements test for merger violates federal double jeopardy clause).  The same-elements test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." Commonwealth v. Jackson, 10 A.3d 341, 345 (Pa.Super. 2010).  The application of the same-elements test "requires a comparison of the elements of the offenses to determine whether each offense requires proof of a fact which the other does not."  Id.

The law presumes counsel has rendered effective assistance.

Commonwealth v. Williams, 597 Pa. 109, 950 A.2d 294 (2008). Under the traditional analysis, to prevail on a claim of ineffective assistance of counsel, a petitioner bears the burden to prove his claims by a preponderance of the evidence. Commonwealth v. Turetsky, 925 A.2d 876 (Pa.Super. 2007), appeal denied, 596 Pa. 707, 940 A.2d 365 (2007). The petitioner must demonstrate: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for the asserted action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. Id. See also Commonwealth v. Kimball, 555 Pa. 299, 724 A.2d 326 (1999). "A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." Commonwealth v. Spotz, 624 Pa. 4, 34, 84 A.3d 294, 312 (2014) (quoting Commonwealth v. Ali, 608 Pa. 71, 86-87, 10 A.3d 282, 291 (2010)). "Where it is clear that a petitioner has failed to meet any of the three, distinct prongs of the...test, the claim may be disposed of on that basis alone, without a determination of whether the other two prongs have been met." Commonwealth v. Steele, 599 Pa. 341, 360, 961 A.2d 786, 797 (2008).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit...." Commonwealth v. Pierce, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be

found ineffective for failing to pursue a baseless or meritless claim."

Commonwealth v. Poplawski, 852 A.2d 323, 327 (Pa.Super. 2004).

> Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

Pierce, supra at 524, 645 A.2d at 194-95 (internal citations omitted).

> Prejudice is established when [a defendant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In [Kimball, supra], we held that a "criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

Commonwealth v. Chambers, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (some internal citations and quotation marks omitted).

Instantly, Appellant trafficked cocaine and heroin in Pennsylvania from December 2005 to November 2009. Appellant's Co-defendant, Dustin Hurlburt, made four individual sales of cocaine, provided by Appellant, to an undercover officer. Witnesses at trial testified to the locations and quantity of the drugs, which Appellant possessed and sold himself and through others. A jury convicted Appellant of multiple offenses stemming from these events. On direct appeal, Appellant argued, among other issues, that his sentence at Count 6 was illegal because the Commonwealth could not prove he personally

possessed or sold between 50 to 100 grams of heroin. This Court addressed

the issue and ultimately affirmed the judgment of sentence.

The PCRA court analyzed Appellant's "merger" claim as follows:

> It is true that Counts 1 [through] 5 each alleged a violation under 35 P.S. § 780-113(a)(30), however, each required proof of a different fact. Counts 1-4 required proof that [Appellant] delivered cocaine to Dustin Hurlburt in Whitesville, New York on four separate occasions: December 15, 2005; January 11, 2006; February 20, 2006; and April 21, 2006, respectively. Dustin Hurlburt then delivered the cocaine to an undercover officer in Potter County, Pennsylvania. Count 5, on the other hand, required proof that [Appellant] was part of a drug distribution enterprise between December of 2005 through [November] of 2009. Specifically, the Commonwealth alleged in Count 5 that [Appellant], Mr. Hurlburt, and several others, on numerous occasions, traveled from [Appellant's] home in Whitesville, New York to New Jersey to pick up large quantities of cocaine that [Appellant] would thereafter distribute to others to sell in Potter County, Pennsylvania. Several third parties were involved in this enterprise other than Dustin Hurlburt, which included, but were not limited to: Gabriel Barber, Adam [Johnson], Gregory Lampman, Wayne Hess, Kenneth Davenport, and Ryan Schrader. Though Mr. Hurlburt had alleged involvement in Count 5, Mr. Hurlburt testified that he purchased cocaine from [Appellant] approximately 60 times. The time frame in question for the delivery was also different, i.e.[,] December of 2005 through [November] of 2009. Therefore, the protections from Double Jeopardy under Article 1 were not violated because Counts 1-5 and merger of the sentences [were] not appropriate as each count required proof of a different fact. ...

(PCRA Court Opinion at 6). The record supports the PCRA court's analysis.

Counts 1 through 4 described four individual sales, by Mr. Hurlburt to an

undercover officer, of cocaine that Appellant had provided to Mr. Hurlburt.

Count 5 enveloped all other sales of cocaine, which multiple witnesses testified

to at trial, from 2005 until 2009. Therefore, Counts 1 through 5 each required proof of different facts, and those convictions did not violate the same-elements test or subject Appellant to a double jeopardy violation at sentencing. See Jackson, supra.

On direct appeal regarding a legality of sentence challenge for Count 6, PWID or delivery of heroin, this Court explained, "The Commonwealth provided sufficient circumstantial evidence that Appellant sold over 50 grams of heroin[.]" Snyder, supra at 21. Count 8 was the conspiracy conviction for PWID or delivery of heroin, related to the possession and distribution of 50 to 100 grams of heroin in Count 6. Appellant is merely presenting with a new spin the same challenge to the aggregate weight of heroin. Therefore, Appellant's challenge to the legality of his sentences at Counts 6 and 8 has already been litigated. See Bridges, supra; Hutchins, supra; 42 Pa.C.S.A. § 9543(a)(3) (stating to be eligible for relief under PCRA, petitioner must plead and prove by preponderance of evidence that allegation of error has not been previously litigated or waived).

Finally, Appellant's claims of ineffective assistance of direct appeal counsel fail because the claims lack arguable merit. Therefore, direct appeal counsel cannot be found ineffective. See Poplawski, supra. Following an independent review of the record, we agree with counsel that the appeal is frivolous. Accordingly, we affirm and grant counsel's petition to withdraw.

Order affirmed. Counsel's petition to withdraw is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/2020